**ROCKWELL INTERNATIONAL CORPORATION, Appellant,**

v.

**Sheila E. WIDNALL, Secretary of the Air Force, Appellee.**

No. 96–1265.

United States Court of Appeals, Federal Circuit.

April 1, 1997.

Jay R. Henneberry, Chadbourne & Parke LLP, Los Angeles, California, argued for appellant.

John C. Erickson III, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., argued for appellee. On the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, James M. Kinsella, Assistant Director, and Rhonda K. Schnare, Attorney.

Gregory A. Smith, Piper & Marbury, L.L.P., Washington, D.C., for amicus curiae Ingalls Shipbuilding, Inc. Of counsel on the brief was William J. Powers, Jr., Ingalls Shipbuilding, Inc., Pascagoula, Mississippi.

Before RICH and BRYSON, Circuit Judges.*

BRYSON, Circuit Judge.

This government contract case raises the question whether certain taxes incurred by appellant Rockwell International Corporation in 1988, 1989, and 1990 were allowable as

---

\* A member of the panel that heard argument in this case was unable to continue with the consideration of the case because of recusal. Pursuant to Rule 47.11 of the rules of this court, the matter was determined by the remaining members of the panel.

costs of performance under the terms of a contract between Rockwell and the Air Force. The Armed Services Board of Contract Appeals, by a divided vote, concluded that the taxes were not allowable as costs. We agree with the Board of Contract Appeals that the tax at issue in this case is properly viewed as a "federal income" tax within the meaning of the pre–1991 version of the Federal Acquisition Regulation (FAR), and that the taxes Rockwell paid therefore fell within the regulatory exemption from allowability for "federal income and excess profits taxes."

## I

In September 1987, Rockwell entered into a contract with the Air Force. The contract incorporated by reference a standard cost-reimbursement clause, which was found in section 52.216–7 of the FAR, 48 C.F.R. § 52.216–7 (1987). That clause provided that the contractor would be entitled to recover its costs of performance, as permitted by subpart 31.2 of the FAR. At the time of the contract, FAR subpart 31.2 provided as follows in pertinent part:

(a) The following types of costs are allowable:

(1) Federal, State, and local taxes ..., except as otherwise provided in paragraph (b) below that are required to be and are paid or accrued in accordance with generally accepted accounting principles....

* * *

(b) The following types of costs are not allowable:

(1) Federal income and excess profits taxes.

48 C.F.R. § 31.205–41 (1987).

The year before the parties entered into the contract, Congress enacted the Superfund Amendments and Reauthorization Act of 1986, Pub.L. No. 99–499, 100 Stat. 1613. That statute created the Environmental Tax, commonly known as the "Superfund Tax," which was codified at 26 U.S.C. § 59A. The Superfund Tax was imposed as a "new environmental income tax," the proceeds of which were to be placed in a trust fund used to defray expenses stemming from the release of hazardous substances into the environment. H.R.Conf.Rep. No. 962, at 320 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3276, 3413. The tax was imposed on all corporate taxpayers and was based on each taxpayer's alternative minimum taxable income, as defined in the Tax Reform Act of 1986. The Superfund Tax was made part of the subtitle of the Internal Revenue Code that is devoted to "Income Taxes," and it provided that each corporate taxpayer must pay, "in addition to any other tax imposed by this subtitle," a tax equal to 0.12 percent of its modified alternative minimum taxable income exceeding two million dollars. 26 U.S.C. § 59A(a) (1994).

Rockwell took the position that the Superfund Tax was an allowable cost within the meaning of FAR subpart 31.2 and therefore submitted a claim under its contract with the Air Force for the total amount of the Superfund Tax that it paid in 1988, 1989, and 1990. The contracting officer denied the claim on the ground that the Superfund Tax was a federal income tax and therefore was specifically made a non-allowable cost under FAR 31.205–41(b).

Rockwell appealed the contracting officer's decision to the Armed Services Board of Contract Appeals, which upheld the contracting officer's decision in a comprehensive opinion. Following an exhaustive review of the legislative and administrative background of the issue, the Board of Contract Appeals, with one judge dissenting, held that FAR subpart 31.2, prior to its amendment in 1991, disallowed all types of federal income taxes, and that the Superfund Tax was properly regarded as a federal income tax. Rockwell has appealed that decision to this court.

## II

Section 31.205–41(b) of the FAR states that "federal income and excess profits taxes" are not allowable costs. That provision traces its origins to a 1923 opinion of the Attorney General regarding a contract between Bath Iron Works and the government. When Bath requested reimbursement for its federal income and excess profits taxes paid for a particular year under the contract, the Attorney General decided that those taxes should not be considered costs. The Attorney General explained that decision as follows:

> The income tax as well as the excess-profits tax is a tax not against the business or property but a tax on the profits realized at the end of the taxable year after the business has been carried on. Neither the business nor the property itself is taxed.... To say that an income or excess-profits tax, imposed as it is on the profits which the company earns, is a part of the actual cost upon which the 10 per cent as profit is to be paid, is a contradiction in terms.

33 Op. Att'y Gen. 528, 529 (1923). Since that time, federal procurement regulations have consistently disallowed federal income and excess profits taxes or, as the exemption from allowability has sometimes been expressed, "federal taxes on income and excess profits." See Armed Services Procurement Regulations, 32 C.F.R. § 414.205(i) (1951). The question posed by this case is whether the Superfund Tax, which has now been repealed, was a "federal income" tax within the meaning of FAR 31.205–41(b), and thus was not an allowable cost under that section of the FAR as that section stood prior to its revision in 1991.

## A

Both the structure of the Superfund Tax and its legislative history support the government's argument that the Superfund Tax was a federal income tax and therefore was not an allowable cost under the pre–1991 version of the FAR. The amount of Superfund Tax owed by a corporate taxpayer was based on the corporation's "alternative minimum taxable income" and thus was a function of the corporation's income. See 26 U.S.C. § 59A (1994). This court has held that the minimum tax, an immediate predecessor of the alternative minimum tax, was an income tax, see Trainer v. United States, 800 F.2d 1086, 1091 (Fed.Cir.1986), and the court's analysis of the operation of the minimum tax supports the government's argument that the Superfund Tax likewise should be deemed an income tax.

The circumstances of its enactment provide further support for the view that the Superfund Tax was a "federal income tax." The House and Senate had devised competing plans to cover the Superfund clean-up costs, but the funding issue was not settled until the Conference Committee devised the compromise plan that was ultimately enacted into law. The compromise plan included excise taxes on petroleum, feedstock chemicals, and certain imported chemical products, together with the Superfund Tax, which the Conference Committee described as a form of income tax. See H.R.Conf.Rep. No. 962, at 320 (1986), reprinted in 1986 U.S.C.C.A.N. 3276, 3413 ("Under the conference agreement, amounts equivalent to excise taxes on petroleum and feedstock chemicals, a new excise tax on imported chemical derivatives, and a new environmental income tax are to be deposited in the Superfund.") (emphasis added). In accordance with that characterization, the Superfund Tax was placed in the portion of the Internal Revenue Code denominated "Income Taxes." Moreover, contemporaneous statements by those who devised the new tax make it clear that they conceived of the Superfund Tax as an income tax. See 132 Cong.Rec. 28,449 (1986) (statement of Sen. Kasten) (characterizing the Superfund Tax as a "broad-based tax on corporate income"); id. at 28,420 (statement of Sen. Bentsen) (characterizing the Superfund Tax

as a "broad-based tax on corporate profits"); *id.* at 28,450 (statement of Sen. Dole) (characterizing the Superfund Tax as a "broad-based ... corporate minimum tax"); *see also* H.R.Rep. No. 103–582, pt. 3, at 16 (1994) (a subsequent congressional report characterized the Superfund Tax as a "corporate environmental income tax").

Other contemporaneous changes made in the Internal Revenue Code to accommodate the new tax likewise buttress the government's argument that the Superfund Tax was an income tax. When Congress enacted the Superfund Tax, it amended section 275 of the Code, 26 U.S.C. § 275, to create an exception for the Superfund Tax to the general rule against deductions of "federal income taxes." That provision would not have been necessary if Congress had not regarded the Superfund Tax as an income tax. In addition, Section 6425(c)(1)(A)(iii) of the Code, 26 U.S.C. § 6425(c)(1)(A)(iii), which addresses overpayments of estimated taxes, was amended to include a reference to the Superfund Tax as one of several statutes that created an "income tax liability."

In response to this evidence of congressional purpose, Rockwell contends that even though the Superfund Tax may be denominated an income tax, it actually functioned as an excise tax and must be treated as an excise tax for purposes of the FAR's cost-allowance provision. While we are skeptical whether the language of the regulation permits us to look behind the congressional characterization of the Superfund Tax as an income tax, we disagree in any event with Rockwell's contention that the Superfund Tax really functioned as an excise tax.

Rockwell concedes that the Superfund Tax was based on the corporate taxpayer's income, but it points out that some excise taxes are imposed on the basis of income as well. The taxes that Rockwell cites, however, are either explicitly denominated as franchise taxes, or are excise taxes that are imposed either on particular businesses or on the basis of particular conduct. *See, e.g., Educational Films Corp. v. Ward,* 282 U.S. 379, 388, 51 S.Ct. 170, 171–72, 75 L.Ed. 400 (1931) (state franchise tax based on corporate income from the preceding year); 26 U.S.C. § 4940, construed in Revenue Ruling 84–169, 1984–2 C.B. 216 (excise tax imposed on investment income earned by a tax-exempt foundation); *William Cramp & Sons Ship & Engine Bldg. Co. v. United States,* 72 Ct.Cl. 146, 153, 1931 WL 2308 (1931) (excise tax based on the value of corporations' capital stock). Those taxes are quite different in both title and function from the Superfund Tax. The Superfund Tax was both denominated an income tax and imposed on income earned in the year for which the tax was imposed; unlike many excise taxes, the Superfund Tax was never limited to particular activities or a narrow class of taxpayers.

Rockwell is correct that several features of the Superfund Tax are frequently associated with excise taxes, such as the low rate of the tax, its limited duration, and the fact that the proceeds of the tax were designated for a trust fund that was to be used for a specific purpose. But Rockwell's argument as to the "excise nature" of the Superfund Tax becomes quite strained when Rockwell contends that the Superfund Tax was a tax on the privilege of doing business and that it was "integrated with other excise taxes imposed for the same purpose." The Superfund Tax was a tax on income that applied to every corporation with income above a certain minimum level; it was therefore no more a tax on the "privilege of doing business" than is the corporate income tax. Moreover, the fact that the Superfund Tax was enacted together with three taxes that were explicitly identified as excise taxes tends to underscore its identity as an income tax. Congress intentionally created two different types of taxes, and the Conference Committee Report explicitly identified the Superfund Tax, in contradistinction to the three excise taxes, as an "environmental income tax." The supposed "integration" of the Superfund Tax with the three excise taxes thus supports the government's argument, not Rockwell's.

In sum, in light of the strong evidence of congressional intent to create an income tax, we cannot agree with Rockwell that what Congress actually did was to create an excise tax on corporate income. As one commentator put the matter,

> [b]oth the legislative history of the Environmental Tax and its structure in the Code leave no doubt that, unlike the other taxes imposed by Superfund, the Environmental Tax is intended to be an income tax and not an excise tax.

Arthur I. Gould, *The New Corporate AMT: Where We Are Today, Where We May Be Tomorrow, in 1 New York Univ. Proceedings of the Forty–Sixth Institute on Federal Taxation* § 36, at 36–53 (1988).

### B

Addressing the specific language of the regulation, Rockwell contends that the term "federal income tax," as used in FAR 31.205–41, must be construed narrowly to refer only to the "regular income tax" or its equivalent. In particular, Rockwell contends that the Superfund Tax was not an "income tax" for purposes of FAR 31.205–41 because it was deductible from the corporation's gross income for purposes of calculating the corporate income tax, and thus it was not a payment to the federal government from the corporation's net income after all expenses were deducted.

We do not attach great significance to the deductibility of the Superfund Tax in attempting to discern its character. While it is true that corporate income tax payments are not deductible from gross income for purposes of calculating the general corporate income tax, Rockwell has not cited any authority suggesting that non-deductibility is a necessary characteristic of an income tax. If Congress were to allow corporate income tax payments to be deducted from corporate gross income, the effect of the change would simply be to alter the effective rate of the corporate income tax; the change in the deductibility rules alone would not affect the basic character of the tax as an income tax.

Rockwell repeatedly characterizes the Superfund Tax as a "cost of doing business" and contends that it therefore was not a form of income tax. But Rockwell's characterization is based largely on the fact that the Superfund Tax was deductible from gross income for purposes of calculating corporate income tax liability. As we have noted, deductibility alone does not convert what otherwise would be an income tax into some other form of tax, such as an excise tax. In this regard, it is notable that Congress did not make the Superfund Tax deductible as an ordinary business expense under section 162 of the Internal Revenue Code, 26 U.S.C. § 162, or as an expense for the production of income, under section 212 of the Code, 26 U.S.C. § 212. Instead, Congress made Superfund Tax payments deductible from gross income under section 164 of the Code, 26 U.S.C. § 164, which permits the deduction of a variety of taxes, including state and local income taxes, from the gross income used to calculate the corporate income tax. Permitting the Superfund Tax to be deducted under section 164 does not necessarily reflect a congressional judgment that the Superfund Tax was a "cost of doing business," as contended by Rockwell, but simply reflects Congress's decision that an entity that is required to pay the corporate income tax should not have to pay other taxes, whether income taxes or otherwise, with after-tax dollars. We therefore reject Rockwell's argument that the Superfund Tax must be regarded as a cost of doing business, like wages or materials, simply because it was deductible from gross income for purposes of calculating the corporate income tax.

### C

Continuing its focus on the text of the regulation, Rockwell next argues that the term "federal income tax" cannot be interpreted to include all taxes based on income, because that would make the immediately following term, "excess profits tax," superfluous. Thus, Rockwell argues, because excess profits taxes are based on income, the term "income tax," as used in the regulation, must

be narrowly limited to the "regular" corporate and individual income taxes.

While that argument is not without force, we do not find it compelling. Regulations may contain superfluous language for various reasons, such as for emphasis or to ensure that a generic term is not misconstrued to exclude a specific item that would normally be regarded as within the generic term's scope. Moreover, the reference to "excess profits tax" has been a fixture of the regulatory language since the language was first adopted—even when the reference to income taxes read "federal taxes on income," which was plainly broad enough to include excess profits taxes. The fact that a tax on excess profits is a kind of tax on income therefore does not, by itself, mandate that the term "federal income tax" be given an interpretation that is narrower than its ordinary meaning would suggest.

### D

Finally, Rockwell and Ingalls Shipbuilding, Inc., as amicus curiae, argue that the circumstances surrounding the 1991 amendment to the FAR support Rockwell's position that the pre–1991 version of FAR 31.205–41 should be interpreted to permit contractors to include Superfund Tax payments as allowable costs of performance.

Shortly after the Superfund Tax was enacted, the Defense Acquisition Regulatory Council considered whether the FAR should be amended to allow Superfund Tax payments to be treated as allowable costs. After studying the issue, the Council's Cost Principles Committee concluded that, as a policy matter, the Superfund Tax should be recognized as an allowable cost for government contractors. The Civilian Agency Acquisition Council reached the same conclusion, and the two Councils proposed an amendment to the regulation that would make Superfund Tax payments prospectively allowable as costs. See 54 Fed.Reg. 43,032 (1989). The comments on the proposed rule were all favorable, including comments from federal agencies. Indeed, Rockwell points

out that the Air Force itself commented that "the policy underlying, and the intended operation of, the prohibition on reimbursing federal income taxes never encompassed the Environmental Tax (or 'Superfund Tax') in the first place."

The amendment, which explicitly made Superfund Tax payments allowable, was subsequently adopted and made effective as of January 22, 1991. See 55 Fed.Reg. 52,782 (1990). Although the background section accompanying the amendment originally stated that the amendment's purpose was "to *clarify* that the Environmental Tax is allowable as a matter of public policy," id. at 52,788 (emphasis added), the background section was later corrected to read: "The purpose of this rule is to *revise* the cost principle at FAR 31.205.41 to make the costs of the Environmental Tax (popularly known as the 'Superfund Tax') allowable, as a matter of public policy," 57 Fed.Reg. 40,344 (1992) (emphasis added).

Both Rockwell and the government attempt to use the 1991 amendment to their advantage. Rockwell argues that the change shows that allowing the Superfund Tax to be charged as a cost of performance has always been consistent with federal procurement policy, while the government argues that the fact that those responsible for amending the FAR considered it necessary to make the change shows that the Superfund Tax was not previously an allowable cost.

Statements made by members of the Councils and by those who commented on the proposed amendment—including the Air Force representative—generally support Rockwell's argument that the policy underlying the cost allowance provisions favors allowing Superfund Tax payments to be charged as costs of performance. But both the statements by the Councils and the comment from the Air Force representative emphasized that they were not addressing the question whether the Superfund Tax was an allowable cost under the pre–1991 version of FAR 31.205–41, which is the question before us. The Air Force comment began with the

statement that it regarded the Superfund Tax as an "income tax," which would make it non-allowable under the pre–1991 version of the FAR. And a memorandum from the Cost Principles Committee of the Defense Acquisition Regulatory Council explained that the change in the regulation was not intended to dictate the manner in which the pre–1991 rule was construed. The memorandum stated: "The old rule must stand on its own. The new rule is not intended to influence the interpretation of the old one as to whether the 'Superfund Tax' is an 'income tax' or an 'excise tax.'"

We therefore evaluate the allowability of Superfund Tax payments based on the narrow question whether the Superfund Tax is properly regarded as a "federal income tax" within the meaning of the pre–1991 version of FAR 31.205–41(b). With respect to that question, we think the government has the better of the case, for the reasons we have explained above. Accordingly, we conclude that the Board of Contract Appeals did not err in holding that the Superfund Tax was a federal income tax as set forth in FAR 31.205–41(b) and as such was not reimbursable under Rockwell's contract with the Air Force.

We note that we have been aided in our consideration of this case by excellent briefs from both parties and from amicus curiae.

*AFFIRMED.*