CONSUMERS POWER COMPANY v DEPARTMENT OF TREASURY

Docket No. 203894. Submitted January 5, 1999, at Lansing. Decided April 30, 1999, at 9:00 A.M. Leave to appeal sought.

Consumers Power Company brought an action in the Court of Claims against the Department of Treasury, seeking a refund of single business taxes and interest assessed by the defendant on the plaintiff after an audit disclosed that for tax years 1985 to 1989 the plaintiff had failed to add to its single business tax base environmental taxes paid pursuant to 26 USC 59A. The court, Carolyn Stell, J., entered a judgment for the plaintiff and ordered a refund. The defendant appealed.

The Court of Appeals *held*:

The single business tax base of a taxpayer consists of the taxpayer's federal taxable income plus the additions or minus the subtractions provided by subsection 9(2) through 9(9) of the Single Business Tax Act, MCL 208.9(2)-(9); MSA 7.558(9)(2)-(9). MCL 208.3(3); MSA 7.558(3)(3). At issue in this case is subsection 9(3), which requires the addition to federal taxable income of "all taxes on or measured by net income . . . to the extent the taxes were deducted in arriving at federal taxable income." The environmental tax, which is assessed at twelve percent of federal modified alternative minimum taxable income that exceeds $2 million, is a tax on or measured by net income, and not an excise tax as determined by the trial court. Furthermore, under 26 USC 164(a)(15), amounts paid as environmental taxes are deducted from federal taxable income. Thus, a taxpayer must add to its single business tax base any environmental tax paid by the taxpayer.

Reversed.

TAXATION — SINGLE BUSINESS TAX — SINGLE BUSINESS TAX BASE — ENVIRONMENTAL TAX.

Any amounts paid by a taxpayer as federal environmental taxes must be added to the taxpayer's federal taxable income when determining the taxpayer's single business tax base (26 USC 59A, 164[a][5]; MCL 208.9[1], [3]; MSA 7.558[9][1], [3]).

*Virginia P. Allen, Theodore J. Vogel,* and *Eric V. Luoma,* for the plaintiff.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Jack L. Van Coevering* and *Glenn R. White*, Assistant Attorneys General, for the defendant.

Before: SMOLENSKI, P.J., and SAAD and GAGE, JJ.

GAGE, J. Defendant appeals as of right a Court of Claims judgment for plaintiff that refunded $35,685 in certain taxes and $19,900.12 in interest defendant had assessed plaintiff. We reverse.

Plaintiff is a Michigan corporation. The instant dispute involves the proper amount owed by plaintiff pursuant to the Single Business Tax Act (SBTA), MCL 208.1 *et seq.*; MSA 7.558(1) *et seq.* The Single Business Tax (SBT) constitutes a percentage of "the adjusted tax base of every person with business activity in [Michigan] that is allocated or apportioned to this state." MCL 208.31(1); MSA 7.558(31)(1). This Court has recognized the nature of the SBT as a value-added tax that measures "the increase in the value of goods and services brought about by whatever a business does to them between the time of purchase and the time of sale." *Cowen v Dep't of Treasury*, 204 Mich App 428, 432; 516 NW2d 511 (1994), quoting Haughey, *The economic logic of the single business tax*, 22 Wayne L R 1017, 1018 (1976). The SBT's intended effect is to impose a tax on the privilege of conducting business activity within Michigan. *Id.* The SBT does not constitute an income tax; it taxes what a business has added to the economy, as distinguished from the income tax's taxation of what the business has derived from the economy. *Town & Country Dodge, Inc v Dep't of Treasury*, 118 Mich App 778, 786; 325 NW2d 577 (1982), aff'd 420 Mich 226; 362 NW2d 618 (1984).

The SBTA defines one's "tax base," MCL 208.9(1); MSA 7.558(9)(1), as "business income," which is itself defined as "federal taxable income."[1] MCL 208.3(3); MSA 7.558(3)(3). To calculate one's *adjusted* tax base for purposes of the SBT, one must incorporate the specific additions and deductions described in SBTA subsections 9(2) through 9(9). Therefore, the SBT tax base consists of one's federal taxable income, taking into consideration § 9's various adjustments. The specific adjustment at issue in this case is found in subsection 9(3), which requires the addition to federal taxable income of "all taxes on or measured by net income and the tax imposed by this act to the extent the taxes were deducted in arriving at federal taxable income."

Pursuant to the Internal Revenue Code (IRC), 26 USC 1 *et seq.*, in the 1987, 1988, and 1989 tax years, plaintiff, in calculating its federal taxable income, deducted the amounts of federal environmental tax it had paid.[2] 26 USC 164(a)(5). However, plaintiff did not in any of these years incorporate the amounts it had paid in federal environmental taxes into its SBT adjusted tax base. In 1991, defendant audited plaintiff's 1985-89 tax returns and discovered plaintiff's failure to incorporate the federal environmental taxes. On January 2, 1992, defendant issued plaintiff an intent to assess the $35,685[3] deficiency caused by plaintiff's failure to add its federal environmental

---

[1] The SBTA further explains that " 'federal taxable income' means taxable income as defined in section 63 of the internal revenue code [26 USC 63]." MCL 208.5(3); MSA 7.558(5)(3).

[2] The federal environmental tax is found at 26 USC 59A. The parties stipulated that plaintiff paid the following amounts of federal environmental tax: (1987) $448,550; (1988) $500,040; (1989) $514,956.

[3] Defendant claimed plaintiff owed $9,752 for the 1987 tax year, $13,998 for the 1988 tax year, and $11,935 for the 1989 tax year, plus interest.

taxes into its SBT adjusted tax base. The parties on September 9, 1993, met before a treasury department referee, who recommended cancellation of defendant's intent to assess. On April 7, 1995, the Commissioner of Revenue rejected the referee's recommendation, and defendant, on July 7, 1995, issued plaintiff a final assessment.

Plaintiff paid the assessment under protest, then filed the instant suit in the Court of Claims, seeking a refund. The court accepted plaintiff's argument that the federal environmental tax was not a tax on or measured by income, but more closely resembled an excise tax:

> The purpose of the tax, that is the Federal Environmental Tax when one reviews the legislative history was not to raise general revenues but to fund the Superfund to aid in environmental cleanup.
>
> The conference agreement also required a corporate taxpayee to pay the Environmental Tax whether or not the taxpayer had Alternative Minim [sic] Taxable Income.
>
> Further, unlike Federal income tax but like excised [sic] taxes, the Environmental Tax was deductible in arriving at Federal taxable income. The Environmental Tax also does not allow any credits to be taken against it.
>
> Finally, the effective date intermination [sic] date of the new Environmental Tax was tied to the dates of the excised [sic] taxes opposed [sic] on Troli [sic] and chemical feed stocks.
>
> I believe that—or I find that the legislative history of this case and the analysis by the hearing officer who also reviewed the entire matter supports [plaintiff's] position that the new Environmental Tax is not a tax based on or measured by net income. The revenue raised by the tax is here marked for environmental cleanup, a specific purpose.
>
> The Environmental Tax would seem to be an excised [sic] tax or more akin to an excised [sic] tax rather than an income tax. As a result of that the Court finds that the Fed-

eral Environmental Tax is not a tax on or measured by net income for the reasons set forth in [plaintiff's] brief.

Therefore, the court ordered that defendant refund the tax and interest paid by plaintiff. Defendant now argues that the court erred in determining that the federal environmental tax appeared to be an excise tax.

The issue involved in this dispute may be simply stated as whether the federal environmental tax constitutes a tax "on or measured by net income" for purposes of SBTA subsection 9(3). This issue clearly depends on our interpretation of subsection 9(3)'s language. Statutory interpretation issues are questions of law and are therefore reviewed de novo. *Oakland Co Bd of Co Rd Comm'rs v Michigan Property & Casualty Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998). Our review of this matter leads us to conclude that the federal environmental tax is indeed a tax on or measured by net income.

The primary rule of statutory construction is to determine and effectuate the Legislature's intent through reasonable construction in light of the statute's purpose. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). If reasonable minds can differ regarding the meaning of statutory language, then judicial construction is appropriate. *Adrian School Dist v Michigan Public School Employees' Retirement System*, 458 Mich 326, 332; 582 NW2d 767 (1998). Where, as here, the statutory language is unclear, a court must look to the object of the statute in light of the harm it is designed to remedy, and strive to apply a reasonable construction that will best accomplish the Legislature's purpose. *Marquis v Hartford Accident & Indemnity*

*(After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994). Language not defined within a statute should be given its plain and ordinary meaning. *Western Michigan Univ Bd of Control v Michigan*, 455 Mich 531, 539; 565 NW2d 828 (1997). In construing statutory language, a court is guided by various rules of statutory construction. *Marquis, supra.*

The SBTA does not define "net income." Although subsection 2(2), MCL 208.2(2); MSA 7.558(2)(2), explains that terms not defined within the SBTA are to be accorded "the same meaning as when used in comparable context in the laws of the United States relating to federal income taxes," the IRC also lacks a standard definition of net income. For further guidance, we may consult Black's Law Dictionary,[4] which provides the following definition of "net income":

> Income subject to taxation after allowable deductions and exemptions have been subtracted from gross income. The excess of all revenues and gains for a period over all expenses and losses of the period. Net income for income tax purposes is what remains out of gross income after subtracting ordinary and necessary expenses incurred in efforts to obtain or to keep it. [Black's Law Dictionary (6th ed).]

Within both Michigan and federal tax law, no set formula applies when calculating net income in various contexts.[5] Net income is defined differently for

---

[4] To ascertain a word's ordinary meaning, reference to a dictionary is appropriate. *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 470; 521 NW2d 831 (1994).

[5] Within the Income Tax Act, MCL 206.1 *et seq.*; MSA 7.557(101) *et seq.*, for example, the Michigan Legislature provided for a calculation of net income that varied from the federal net income determination. Section 28 of the Income Tax Act provides that

> "[t]axable income" or "net income" means, unless specifically defined otherwise in this act, taxable income as defined in the internal revenue code for the subject taxpayer for federal income

different purposes,[6]   with its value dependent on

> tax purposes, *subject to* any adjustment resulting from the election in [MCL 206.271; MSA 7.557(1271), which addresses gains or losses arising from certain property sales] but without deduction or credit for any tax on or measured by net income. [MCL 206.28; MSA 7.557(128) (emphasis added).]

Thus, Michigan permits different adjustments to gross income than does the federal government, but still defines the ultimate result as "net income" or "taxable income."

[6] The Michigan Supreme Court discussed the fluidity of the concept of "net income."

> The term "net income," in law or in economics, has not a rigid meaning. Every income tax act necessarily defines what is included in gross income; what deductions are to be made from the gross to ascertain net income; and what part, if any, of the net income, is exempt from taxation. These details are largely a matter of governmental policy. As to them States differ; and there is apt to be difference of view in the same States at different times; and at the same time a different definition of taxable net income for different classes of taxpayers. [*Armco Steel Corp v Dep't of Revenue*, 359 Mich 430, 450; 102 NW2d 552 (1960), quoting *Atlantic Coast Line R Co v Doughton*, 262 US 413, 422, n 6; 43 S Ct 620; 67 L Ed 1051 (1923).]

Several different descriptions of "net income" are found within various Michigan statutes. Article II(4) of the multistate tax compact, MCL 205.581; MSA 4.146(101), defines "income tax" as a "tax imposed on or measured by net income including any tax imposed on or measured by *an amount arrived at by deducting expenses from gross income, 1 or more forms of which expenses are not specifically and directly related to particular transactions*." [Emphasis added.] The Income Tax Act describes net income differently. See n 5, *supra*. Within the Savings and Loan Act, MCL 491.102 *et seq.*; MSA 23.602(102) *et seq.*,   another formulation of net income appears when one attempts to calculate common stock cash dividends:

> As used in this section "net income" means the remainder of all earnings from operations plus actual recoveries on loans and investments and other assets previously charged off, after deducting from the total all operating expenses, actual losses, accrued dividends on preferred stock, accrued interest on capital notes, bonds, or debentures, all taxes, and recognizing extraordinary gains and losses. [MCL 491.530(2); MSA 23.602(530)(2).]

The Internal Revenue Code also describes different types of net income, including (1) "distributable net income," an estate or trust's taxable income computed with various modifications, 26 USC 643(a); (2) "undistributed net income," the amount by which a trust's distributed net

whatever deductions the legislature permits in a particular setting.

To properly ascertain whether the federal environmental tax constitutes a tax on or measured by net income, we must examine the operation and effect of the environmental tax. *Trainer v United States*, 800 F2d 1086, 1089 (Fed Cir, 1986). Before considering the nature of the environmental tax, however, we note the following observations regarding the SBT that affect our determination whether the environmental tax falls within SBTA subsection 9(3)'s definition of a tax "on or measured by" net income. First, every word of a statute should be given meaning and no word should be treated as surplusage or rendered nugatory if at all possible. *Altman v Meridian Twp*, 439 Mich 623, 635; 487 NW2d 155 (1992). The Legislature, in enacting SBTA subsection 9(3), required that all taxes *on* and all taxes *measured by* net income would be included in the SBT base. Second, we presume that the Legislature was aware of all existing statutes when enacting new laws. *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993). We thus presume that the Legislature knew that statutory sections defined "net income" differently. Given the Legislature's awareness of these different definitions and the Legislature's failure to narrowly define "net income" within subsection 9(3), we may at least

---

income exceeds the total of the amount distributed plus the amount of tax attributable to the distributed net income, 26 USC 665(a); (3) "net income from foreclosure of property," 26 USC 857(b)(4)(B), and "net income derived from prohibited transactions," 26 USC 857(b)(6)(B)(i), figures involved in real estate investment trust taxation; (4) "net income derived from prohibited transactions," 26 USC 860F(a)(3), and "net income from foreclosure property," 26 USC 860G(c)(2), both involving real estate mortgage investment conduits; and (5) "capital gain net income," any amount by which gains created by capital asset sale or exchange exceed capital asset sale or exchange losses, 26 USC 1222(9).

assume that the Legislature intended not to limit its definition for SBTA purposes. Third, defendant in 1989 revised its standard instructions with respect to SBT calculation. In 1987 and 1988 the instructions stated, "Enter all taxes on, or measured by, net income including city, state and foreign income taxes claimed as a deduction on your federal return." The revised form instructed, "Enter all taxes on, or measured by, net income, including city, state, foreign income *and environmental taxes* claimed as a deduction on your federal form." [Emphasis added.] A review of SBT § 9's legislative history indicates that the Legislature has amended this section three times since defendant altered the SBT instructions in this manner, and has not expressed any disagreement with these instructions. Because the executive interpretation given a law by officials charged with its administration must be presumed to have been known to the Legislature so that such construction would be carried with it and sanctioned when the Legislature amends the statute and reenacts the language so construed, *Melia v Employment Security Comm*, 346 Mich 544, 565; 78 NW2d 273 (1956), we may presume that the Legislature approved defendant's understanding that under subsection 9(3), the federal environmental tax constituted a tax on or measured by net income.

THE FEDERAL ENVIRONMENTAL TAX IS "ON OR MEASURED BY NET INCOME."

One calculates the federal environmental tax owed by making certain modifications to net income. Specifically, a corporation determines the amount of environmental tax by modifying its alternative minimum taxable income (AMTI). 26 USC 59A(b). A corporation must pay the alternative minimum tax (AMT), 26

USC 55, when its AMTI exceeds the amount of regular tax owed by the corporation under 26 USC 11. *Okin v Comm'r of Internal Revenue*, 808 F2d 1338, 1340 (CA 9, 1987).

> The AMT was enacted by Congress in an attempt to ensure that taxpayers with significant levels of economic income pay at least a minimum amount of tax on that income. To achieve this goal, some items that are permitted deductions or exclusions from income under the regular income tax regime are not available in computing AMTI. [*Snap-Drape, Inc v Comm'r of Internal Revenue*, 98 F3d 194, 199 (CA 5, 1996).]

The AMTI represents a corporation's taxable income, subject to the modifications located in §§ 56, 57, and 58 of the IRC.[7] 26 USC 55(b)(2). The AMT itself consti-

---

[7] The following general overview of AMTI calculation is instructive:

In the case of a corporation, the minimum tax is 20 percent of so much of the [AMTI] as exceeds the exemption amount, reduced by the alternative minimum tax foreign tax credit. . . .

*     *     *

For corporate taxpayers, there is a $40,000 exemption amount, and this amount is similarly phased out for [AMTI] in excess of $150,000, at the rate of 25 cents on the dollar.

The [AMTI], on which the tax is applied is the taxable income of the taxpayer, determined with the adjustments provided in [IRC] sections 56 and 58, and increased by the amount of the items of tax preference described in section 57 of the [IRC]. [47A CJS, Internal Revenue, § 321, p 653.]

Adjustments provided for by [IRC] provision involve a recomputation of certain items or deductions, for minimum tax purposes, on a less favorable basis than that used in determining the regular tax; while in the case of the [IRC] provision specifying items of tax preference, part of the deduction allowed against the regular tax is added back in determining [AMTI]. Thus, "adjustments" as well as "items of tax preference" increase the base for applying the minimum tax, and in this respect, they are regarded, and have been indiscriminately referred to, as preferences, and are so considered in the following discussion, although separately identified.

tutes an income tax. *Rockwell Int'l Corp v Widnall*, 109 F3d 1579, 1581 (Fed Cir, 1997).[8]

The calculation of the federal environmental tax base begins with the AMTI, an income tax base, and ends after making two modifications to arrive at a modified alternative minimum taxable income (MAMTI). The federal environmental tax is a percent-

Generally, for all taxpayers, accelerated depreciation on all property placed in service after 1986 (other than property granted a transitional exception for regular tax depreciation and investment tax credit purposes) is an adjustment preference to the extent different from alternative depreciation (using the 150 percent declining balance method for personal property). Also, certain timing preferences (such as depreciation) are measured for post-1986 property on an aggregated basis, instead of item-by-item without netting. Other preferences for which adjustments are provided for all taxpayers include expensing of mining exploration and development costs; use of the completed contract method of accounting for long-term contracts other than certain home construction contracts; use of the installment method of accounting for sales of certain property; and 60 month amortization of certain pollution control facilities. It is further provided for both corporate and noncorporate taxpayers, that the net operating loss deduction must be recomputed in a specified manner.

Items of tax preference which to a specified extent must be added back to the taxable income of both corporate and noncorporate taxpayers include excess depletion deductions; intangible drilling cost deductions; tax-exempt interest on certain private activity bonds; accelerated depreciation or amortization on certain property placed in service before the 1987 tax year; and a percentage of the amount excluded as gain from certain small business stock.

\*　　\*　　\*

Certain adjustments and items of preference are specially applicable to corporations. For 1987 through 1989, one-half of the excess of pre-tax book income of a corporate taxpayer (including members of a group filing a consolidated tax return for the year), over other [AMTI], is a preference. After 1989, pre-tax book income is replaced for this purpose by earnings and profits, with certain adjustments. [47A CJS, Internal Revenue, § 322, pp 654-655.]

[8] The *Rockwell* court noted that "the minimum tax, an immediate predecessor of the [AMT], was an income tax." *Id.*, citing *Trainer v United States, supra* at 1091.

age of a corporation's MAMTI. The MAMTI represents the corporation's AMTI, with two modifications that eliminate deductions for an alternative net operating loss (IRC 56[d]) and for the environmental tax itself (IRC 164[a][5]). IRC 59A(b). Corporations must pay in federal environmental tax twelve percent of any MAMTI over $2 million. The MAMTI, and consequently the amount of federal environmental tax, are directly tied to income—the greater the income, the larger the amount of federal environmental tax owed. In effect and operation, the environmental tax taxes an adjusted income figure beyond a minimum threshold, *Trainer, supra,* and thus constitutes a tax on or measured by net income.[9] We find that the MAMTI qualifies as a measure of "[i]ncome subject to taxation after

---

[9] Plaintiff argues that the AMTI modifications made in calculating MAMTI are significant enough to remove the environmental tax from the realm of income taxes. Plaintiff offers in support of its argument comparisons between its federal taxable income and MAMTI for the tax years at issue.

| | | | |
|---|---|---|---|
| 1987 | Federal taxable income: | $ | (757,108,692) |
| | MAMTI | | 382,231,965 |
| 1988 | Federal taxable income | | (329,562,036) |
| | MAMTI | | 437,433,282 |
| 1989 | Federal taxable income | | 88,392,589 |
| | MAMTI | | 470,470,495 |

Plaintiff contends that such vastly different figures cannot possibly represent measurements of net income. As we have discussed, however, the SBT contemplates a broad definition of net income, which varies from context to context. The bottom-line measurement is therefore not determinative. The differences between plaintiff's federal taxable income and its AMTI for the years in question were also significant. As plaintiff acknowledges, however, each constitutes a measurement of net income.

| | | | |
|---|---|---|---|
| 1987 | Federal taxable income | $ | (757,108,692) |
| | AMTI | | 38,370,317 |
| 1988 | Federal taxable income | | (329,562,036) |
| | AMTI | | 43,879,455 |
| 1989 | Federal taxable income | | 88,392,589 |
| | AMTI | | 47,215,550 |

Thus, while sometimes large differences existed between plaintiff's federal taxable income and MAMTI, this does not necessarily signify that the environmental tax is not an income tax.

allowable deductions and exemptions have been subtracted." Black's Law Dictionary, *supra* (defining "net income").

A review of the federal environmental tax's relevant legislative history supports our conclusion that it is a tax on income. Congress enacted the federal environmental tax as part of a package of taxes designed to fund environmental cleanup. PL 99-499, 100 Stat 1613. Plaintiff reasons that because three of the other taxes enacted were excise taxes designed to fund the same Hazardous Substance Response Trust Fund (Superfund) and because all the excise taxes terminated at the same time as the environmental tax, Congress must have also intended that the environmental tax itself constitute an excise tax. However, the following language within the public law that enacted the federal environmental tax reflects a different congressional intent regarding the character of the environmental tax:

> Sec. 516. Environmental Tax.
>
> (a) IN GENERAL. Subchapter A of Chapter 1 of the Internal Revenue Code of 1986 (relating to income taxes) is amended by adding at the end thereof the following new part:

---

Plaintiff also contends that merely because one calculates the environmental tax by utilizing federal taxable income as a starting point and then making various adjustments does not render the environmental tax a tax on income, citing *Gillette Co v Dep't of Treasury*, 198 Mich App 303, 310-311; 497 NW2d 595 (1993). This Court in *Gillette* examined the SBT and concluded that the SBT did not represent an income tax because of the extensive adjustments to federal taxable income required to compute it. *Id.* This Court did not hold that any tax calculated with federal taxable income as a starting point subject to various adjustments could not constitute a tax on income. We may distinguish the federal environmental tax base (MAMTI) from the SBT base reviewed in *Gillette* on the basis that federal taxable income is subject to more modifications in reaching the SBT base. See SBT § 9, 26 USC 59A. Furthermore, as we have indicated, in operation and effect the environmental tax is an income tax.

\*     \*     \*

Sec. 59A. Environmental tax. [PL 99-499, § 516, 100 Stat 1613.]

Thus, while the other excise taxes passed at the same time as the environmental tax appear within IRC subtitle D labeled "Miscellaneous Excise Taxes," § 59A appears within IRC subchapter A.[10] Furthermore, a House Conference Committee Report, HR Conf Rep 99-962, clearly indicates that the committee considered and rejected certain new excise tax proposals, agreeing instead to finance the Superfund by imposing "amounts equivalent to excise taxes on petroleum and feedstock chemicals, a new excise tax on imported chemical derivatives, *and a new environmental income tax.*" (Emphasis added.) After considering the extension of the various Superfund financing provisions in 1994, the committee explained that it had decided to extend "the present-law Superfund excise taxes on petroleum, chemicals, and imported substances through December 31, 2000, *and the present-law corporate environmental income tax* through taxable years beginning before January 1, 2001." (Emphasis added.) No indication exists that Congress considered the environmental tax an excise tax.[11]

---

[10] Plaintiff argues that the environmental tax's appearance within IRC subchapter A is not determinative because other nonincome taxes, namely, the self-employment tax, which plaintiff labels a social security and Medicare tax, also appear within subchapter A. We note, however, that Medicare and social security taxes are imposed on a taxpayer's gross *income.* 26 USC 1401-1403.

[11] Plaintiff suggests that the environmental tax must be an excise tax because it was designed to tax large, capital-intensive corporations for polluting the environment. Plaintiff failed however to support this assertion, and also failed to submit evidence before the Court of Claims supporting this proposition. We further note that the environmental tax was not related to any particular business activity, but rather applied to any corporation with a MAMTI exceeding $2 million.

Other IRC provisions further support our conclusion that Congress intended the environmental tax to be an income tax. First, 26 USC 275, which is part of an IRC subchapter that provides instruction regarding computation of taxable income, states that federal income taxes generally may not be deducted. 26 USC 275(a)(1). Section 275 specifically explains, however, that this general rule regarding the deductibility of federal income taxes does not apply to the federal environmental tax.[12] Subsection 275(a). While plaintiff contends that the environmental tax exception intended to clarify that this tax was not an income tax, plaintiff's argument is illogical. If the environmental tax represented an excise tax, Congress would not have addressed it within § 275's provision regarding income taxes. Additionally, the environmental tax appears within the definition of "income tax liability" in the IRC provisions concerning estimated taxes. 26 USC 6425(c)(1)(A)(iii). See *Rockwell, supra* at 1581-1583 (examining evidence of congressional intent and concluding that the federal environmental tax represented an income tax).

Finally with respect to congressional intent, we observe that for tax reporting purposes, the environmental tax is treated in the same manner as an income tax. One reports the environmental tax on form 4626, the same form used for reporting the AMTI, and then transfers the amount of form 1120 for inclusion as part of the corporation's overall income tax liability. The environmental excise taxes, however, are reported on form 6627, and then consolidated with form 720, a quarterly excise tax return. 26 CFR

---

[12] IRC subsection 164(a)(5) specifically permits the deduction of the federal environmental tax.

52.0-1; 26 CFR 40.6011(a)-1. Although these Internal Revenue Service classifications and treatments are not dispositive in determining the character of the environmental tax, they are properly considered when determining congressional intent. *United States v Nat'l Bank of Commerce*, 472 US 713, 730; 105 S Ct 2919; 86 L Ed 2d 565 (1985). Given the numerous and consistent indications that Congress intended that the environmental tax constitute an income tax, we conclude that the legislative history supports our determination that, in operation and effect, § 59A taxes income.

Therefore, the Court of Claims incorrectly opined that the federal environmental tax was an excise tax. The court made no real effort to determine the effect and operation of the environmental tax, but instead focused on several extraneous factors. For example, the court noted that Congress imposed the federal environmental tax to fund environmental cleanup, not to raise general revenues. While the court's observation is correct, it fails to address the question whether the environmental tax was on or measured by net income. The ultimate use of the tax revenues is irrelevant to the questions of what is being taxed and how the tax is measured.

The court also mentioned that taxpayers had to pay the environmental tax regardless of whether they had AMTI. This observation, however, also fails to provide any insight into the environmental tax's operation and effect.[13]

---

[13] The United States Supreme Court referenced the following brief example illustrating that a tax's operation and effect control any determination regarding the true nature of the tax: "A tax on sleeping measured by the number of pairs of shoes you have in your closet is a tax on shoes." *Trinova Corp v Michigan Dep't of Treasury*, 498 US 358, 374; 111

The court believed that the environmental tax resembled an excise tax because it was deductible in determining federal taxable income. The court presumably determined that because the federal income tax is not deductible in determining federal taxable income, the environmental tax more closely resembled an excise tax. However, whether a tax is deductible in calculating federal taxable income does not determine whether the tax is an excise tax or an income tax. For example, state, local, and foreign income taxes are deductible in arriving at federal taxable income. 26 USC 164(a).

Another factor cited by the court in finding that the environmental tax represented an excise tax was that no credits were available against the environmental tax. Plaintiff provides no support for the proposition that credits are allowed against all income taxes, or the proposition that taxes without credits cannot be income taxes; therefore, we need not consider plaintiff's argument to the extent that it raises this factor. *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (A mere statement without authority is insufficient to bring an issue before this Court.). In any event, this factor also fails to address or illuminate the relationship between the environmental tax and net income.

The court finally considered that the environmental tax termination date coincided with the termination dates of the excise taxes that were passed at the same time. The environmental tax shared termination dates with the other excise taxes that Congress enacted at the same time because all the taxes shared

S Ct 818; 112 L Ed 2d 884 (1991), quoting Jenkins, *State taxation of interstate commerce*, 27 Tenn L R 239, 242 (1960).

the same purpose—to establish within the Superfund a certain amount of money to finance environmental cleanup. HR Conf Rep 99-962, *supra*. Like the purpose behind the taxes, however, their termination date is irrelevant to an ascertainment of how the environmental tax is measured and what is being taxed. Because the court failed to consider the controlling issue regarding the effect and operation of the environmental tax, the court erred in concluding that the tax represented an excise tax.

In summary, the environmental tax in effect and operation represents a tax "on or measured by net income" under the SBTA. Therefore, plaintiff was required to add the amounts of environmental tax into its SBT base, SBTA subsection 9(3), and defendant properly assessed plaintiff the 1987-89 deficiencies caused by plaintiff's failure to add back the applicable environmental taxes.

Reversed.