# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Conservatorship of MARY LOUISE
MONTGOMERY.

---

RITA HICKS,

      Petitioner-Appellee,

v

MARIAN MONTGOMERY,

      Respondent-Appellant.

UNPUBLISHED
August 22, 2017

No. 332507
Oakland Probate Court
LC No. 2013-354173-CA

---

Before: SAAD, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

Respondent, Marian Montgomery, appeals the probate court's order that modified the conservatorship of Mary Louise Montgomery. In that order, the probate court replaced Marian as conservator and appointed public administrator Jennifer Carney to be the successor conservator. We affirm.

## I. BASIC FACTS

In December 2013, Marian[1] filed a petition to appoint a conservator for her mother, Mary. At the time of the petition, Mary was 86 years old, lived in Oak Park, Michigan, and had purportedly started to exhibit symptoms of dementia. Mary had eight surviving children. In March 2014, the interested parties agreed to allow Marian to serve as conservator and co-guardian with sibling LaJune Talbron. Both Marian and LaJune lived in Detroit.

In February 2015, another of Marian's sisters, Rita Hicks, filed a petition to modify the conservatorship, and a month later, she filed an amended petition. In the amended petition, Rita alleged that Marian, as conservator,

---

[1] For clarity and consistency, we will later refer to members of the family by their first names.

does not budget enough money for food. She has removed my mother's clothes and coats from her home which causes problems when my mom wants to go out. She purchased insurance for my brother's car in my mother's name. She let's [sic] the care provider drive my mother's car and she does not communicate with the family.

Rita consequently requested that Marian be removed as conservator and LaJune be appointed. At a March 31, 2014 hearing, the probate court appointed a public administrator, Jennifer Carney, as a temporary conservator.

The probate court then conducted a two-day hearing, which initially took place on July 2, 2015, and concluded on March 22, 2016.[2] At the July 2, 2015 hearing, Rita testified to how there was a lot of conflict between Marian and the rest of the siblings, including in the presence of their mother, Mary. Rita also described how Marian "has been physical" during some of these confrontations. Indeed, due to Marian frequently getting physical, Rita attempted to visit her mother when Marian would not be present. Due to the discourse revealed at the July 2 hearing, the probate court suspended Marian's duties as conservator and appointed public administrator Carney as a special/temporary conservator. Carney testified at the March 22, 2016 hearing and stated that Mary had recently been placed in a group home in Oak Park, which provided her the 24-hour professional supervision that she needed.

In her testimony, Marian did not deny that there was conflict between her and her siblings. She also acknowledged that her conversations with the siblings generally are confrontational, which has led to instances of physicality.

With respect to the car she placed on her mother's insurance policy, Marian stated that it was not her brother's car that she put on the policy but instead it was her own car. Marian thought that this was acceptable because she used the car for her mother's benefit. Moreover, Marian stated that because she lived in Detroit, it was "questionable" whether she could afford the insurance on the car on her own policy and that the cost to insure the car was "only" $62 per month in addition to Mary's normal insurance cost. Marian repeatedly asserted that she reimbursed Mary for the cost of insuring the car but later conceded that she only paid Mary $100, when the amount owed was almost $250.[3]

Regarding where her mother should live, Marian testified if she got her appointed powers back, she would place Mary back in her own home. Although Marian acknowledged that Mary requires 24-hour supervision, Marian thought that between herself and some other people, the necessary supervision could be provided.

---

[2] There were several adjournments that occurred in the interim.

[3] Marian stated that the car was only insured on Mary's insurance for a few months. At the July 2, 2015 hearing, Marian stated that the car was on her mother's insurance policy for March, April, May, and June 2015. At the March 22, 2016 hearing, Marian testified that the car was on the policy for April, May, June, and July 2015.

At the close of the hearing, the probate court ruled from the bench:

[B]ased upon the evidence presented[,] I find clear and convincing evidence that Mary Montgomery continues to require a guardian and conservator. As to suitability, the evidence presented demonstrates that despite good intentions[,] the children of Mary Montgomery are not suitable at this time. In particular, the evidence demonstrated that the deep emotional connection between Mary Montgomery and Mary [sic—Marian] Montgomery prohibits her ability to act in her mother's best interest and to separate Mary's [sic—Marian's] wants from Mary's actual needs.

And, based upon the evidence presented and the ongoing conflict among and between the children, the best interest of Mary Montgomery is served by finding all children unsuitable at this time and retaining a public administrator, Jennifer Carney, as sole guardian with full powers and conservator, which is in Mary's best interest.

## II. ANALYSIS

Marian argues that the probate court erred when it removed her as conservator and replaced her with a public administrator. This Court reviews a probate court's decision to appoint or remove a fiduciary for an abuse of discretion. *In re Conservatorship of Bittner*, 312 Mich App 227, 235; 879 NW2d 269 (2015). A court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. *Id.* However, a probate court's factual findings are reviewed for clear error. *Id.* "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *In re Conservatorship of Townsend*, 293 Mich App 182, 186; 809 NW2d 434 (2011) (quotation marks and citation omitted).

Marian claims that the probate court erred as a matter of law because it did not find that she mismanaged the estate or failed to perform any duty pertaining to that office. However, MCL 700.5414 merely requires that a court can remove a conservator "for good cause." Because "good cause" is not defined by the statute, we may consult a dictionary. See *Consumers Power Co v Dep't of Treasury*, 235 Mich App 380, 385; 597 NW2d 274 (1999). In *Black's Law Dictionary* (10th ed), the term "good cause" simply is defined as "[a] legally sufficient reason." See also *People v Buie*, 491 Mich 294, 319; 817 NW2d 33 (2012) ("Good cause simply means a satisfactory, sound or valid reason . . . .") (quotation marks and citation omitted); *In re Utrera*, 281 Mich 1, 10-11; 761 NW2d 253 (2008) (holding that "good cause" means "a legally sufficient or substantial reason"). Therefore, we reject Marian's view that she could only have been removed on a finding that she mismanaged the estate or failed to perform any required duty.[4] Good cause is a broad term and encompasses more than what Marian suggests.

---

[4] Although the probate court did not specifically cite any mismanagement in its ultimate ruling, we would be remiss if we did not note that the probate court previously noted its "concern" that

-3-

Here, the probate court found that Marian was unsuitable to be conservator because her strong emotional connection to her mother interfered with her ability to act in her mother's best interest. On appeal, Marian does not reference this finding and consequently does not challenge it. Regardless, we are not left with a definite and firm conviction that the probate court erred. The record shows that Mary requires professional 24-hour supervision and is doing well in her new assisted-living facility. Marian's desire to put Mary back in her old home demonstrates that she is not putting her mother's best interests first. One of the reasons Marian cited for wanting to put Mary back in her old home was that Mary was very proud of her home and took great satisfaction of the fact that she paid off her mortgage. While this is laudable, it is not a countervailing reason to put at risk the proper care that Mary currently is receiving from the assisted-living facility. Furthermore, although Marian claims that she reimbursed Mary for the cost to insure her car on Mary's insurance policy, the evidence shows that only a portion of the amount was paid. This treatment of Mary's assets—making Mary pay for the insurance for Marian's vehicle—is not in Mary's best interest. Importantly, we are confident that the inability to act in her mother's best interests easily qualifies as good cause for her removal as conservator. Consequently, the probate court did not abuse its discretion.

Marian also argues that the probate court could not remove her as conservator merely because it found that there was an ongoing conflict between all of Mary's children. However, as we have already described, the court did not terminate on this basis alone. Indeed, the principle reason the court terminated Marian as conservator was that she was unable to render decisions in the best interests of her mother. Therefore, Marian's premise is unfounded, and we need not decide whether conflict and hostility alone can constitute good cause for the removal of a conservator.

Lastly, Marian argues that certain evidence introduced in the hearing should not have been admitted. Marian claims that the following evidence was improperly admitted at the July 2, 2015 hearing: the fact that Marian is divorced, the fact that Marian previously filed for bankruptcy, and the fact that Marian was held in contempt of court in relation to the divorce. Marian claims that these events occurred over 15 years ago and have no bearing on anything relevant. We agree that that it is questionable that these facts were relevant to prove Marian's "character" and "credibility" as Rita's counsel claimed at the July 2 hearing. However, it is apparent from the record that counsel was merely interested in obtaining confirmation from Marian about the third fact: that Marian was incarcerated for contempt of court in Massachusetts for the failure to follow a court order. After initially denying having ever been incarcerated, Marian later admitted that she had been.[5] We agree that the probate court abused its discretion

Marian insured her vehicle on her mother's insurance because that is "a typical scam" due to the fact that there is a significant difference in insurance rates between Oakland County and Detroit. The court also noted how Marian, who claimed to have reimbursed Mary for the extra cost of insurance, only paid Marian $100 out of nearly $250 that was incurred for the insuring of Marian's vehicle.

[5] This line of questioning started when counsel asked whether Marian had been incarcerated. When Marian replied, "No," counsel then established the background leading up to the Massachusetts' court's contempt ruling, which included the fact that Marian had gone through a divorce proceeding and filed for bankruptcy protection. After being walked through the history

when it admitted evidence related to Marian's failure to follow a court order (and her resulting contempt of court) because, aside from the lengthy amount of time that had passed since she had been found in contempt, it is not apparent how this past indiscretion is evidence of Marian's credibility or her alleged lack of fitness to be a fiduciary. Regardless, we hold that any error is harmless. Nowhere in the probate court's ultimate ruling does it refer to any of this evidence, and more importantly, nothing in the court's salient finding—that Marian lacks the ability to put her mother's interests first—indicates that the court relied on the evidence in any manner. Consequently, Marian is not entitled to any relief. See MCR 2.613(A).

Affirmed.

/s/ Henry William Saad
/s/ Deborah A. Servitto
/s/ Michael F. Gadola

---

of events, Marian relented and admitted that she indeed had been placed in jail for 56 days for contempt of court for failing to turn over some retirement money to her ex-husband. Therefore, we find that the evidence of her divorce and bankruptcy was merely background information because it was not solicited for any other purpose than (1) to possibly refresh Marian's memory and (2) to provide the probate court with the proper context for Marian's subsequent contempt of court. Further, the evidence of the divorce and bankruptcy was not prohibited because it was not used to show that Marian acted in conformity with a particular character trait. See MRE 404(b).